Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 1 of 20   PageID #: 27
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 1 of 20
PageID #: 1

ALSD Local 106 (Rev. 07/13) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Alabama

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. MJ 19-0169-B
A Black Motorola Phone Model XT1929-17 IMEI: )
355550094976516, In The Custody of the Mobile )
Division, Federal Bureau of Investigation )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A Black Motorola Phone Model XT1929-17 IMEI: 355550094976516, In The Custody of the Mobile Division, Federal Bureau of Investigation

located in the   Southern   District of   Alabama   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incoporated herein from Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 875(c) | Interstate Transmission of Threat to Injure |
| 18 USC § 922(g)(3) | Unlawful User in Possession of a Firearm |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Lisa M. Reiter, FBI
*Printed name and title*

Sworn to before me and attestation acknowledged pursuant to FRCP 4.1(b)(2).

Date: November 5, 2019

*Judge's signature*

City and state: Mobile, Alabama         Sonja F. Bivins, United States Magistrate Judge
*Printed name and title*

Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 2 of 20   PageID #: 28
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 2 of 20
PageID #: 2

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Lisa M. Reiter, a Special Agent (SA) with the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation. I am a law enforcement officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses against the United States. I have been employed by the FBI for 17 years. During my tenure with the FBI, I have been assigned investigations dealing with white collar crime, money laundering, drug trafficking organizations, violent street gangs, and violent crimes. Through my training, education and experience, I have become familiar with the manner in which offenders communicate using e-mail, social media, and the internet to plan, discuss, and carry out violent crimes.

3. This memorandum is submitted as part of my sworn application for search authorization, it contains information necessary to support probable cause for the application. It is not intended to include all facts or matters observed by me or known by the Government. I am one of the Special Agents investigating the matters referenced in this affidavit. The information provided is based on my personal knowledge and observations made during the course of this

Case 1:19-mj-00169-B Document 1-1 Filed 11/05/19 Page 3 of 20 PageID #: 29
Case 1:19-mj-00169-B *SEALED* Document 1 *SEALED* Filed 11/05/19 Page 3 of 20
PageID #: 3

investigation; information conveyed to me by other law enforcement and Government officials; and my review of records and documents obtained during the investigation. The articles to be searched are the personal cellular telephone of THOMAS MATTHEW McVICKER.

4. The forensic search for threatening communications and drug user in possession of a firearm will be limited to that of McVICKER's personal cellular telephone, a black Motorola phone with a black case, IMEI: 35550094976516, which was seized by Indiana State Police on August 16, 2019 while arresting McVICKER for transmitting in interstate commerce messages from various locations within the United States to Fairhope, AL that contain clear threats to conduct a mass shooting and suicide, in violation of Title 18 § 875(c). The search will include any and all information stored locally on the device, including but not limited to the locally stored content of any iCloud, Google Drive, DropBox, SkyDrive, or other similar storage type accounts; and any and all social messaging type accounts, including but not limited to, Say Hi, Tor, Kik, SnapChat, Google Hangout, Cupid's Chat, Voxer, Instagram, Pinterest and Facebook Messenger, and any search terms run through web browsers, including but not limited to Google, Bing, and Yahoo; and any and all gaming accounts and data related to gaming consoles. This member is not the subject of a previous search application. Nighttime service is not requested.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

5. The property to be searched is the following (hereafter referred to as device):

Type: Cell Phone

Make: Motorola

Model: XT1929-17

Case 1:19-mj-00169-B Document 1-1 Filed 11/05/19 Page 4 of 20 PageID #: 30
Case 1:19-mj-00169-B *SEALED* Document 1 *SEALED* Filed 11/05/19 Page 4 of 20
PageID #: 4

IMEI: 355550094976516

This device is currently located at the Evidence Control Room of the Mobile Division of the Federal Bureau of Investigation (hereafter FBI), 200 North Royal Street, Mobile, Alabama. This device was released by the Indiana State Police to the Indianapolis FBI on September 16, 2019, pursuant to an arrest by the Indianapolis State Police and Indianapolis FBI, in connection with this investigation. This device was released by the Indianapolis FBI to the Mobile FBI on September 24, 2019.

6. The applied-for warrant would authorize the forensic examination of the device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. On August 12, 2019, Task Force Officer (TFO) ▇▇▇▇ of the Tampa Division of the FBI received information that subject, Thomas Matthew McVICKER is threatening to conduct a mass shooting and suicide. TFO ▇▇▇▇ made contact with the complainant, ▇▇▇▇ who advised the following:

8. ▇▇▇▇ and McVICKER have been friends since 2006 and have maintained communication off and on throughout the years. ▇▇▇▇ currently resides in Fairhope, Alabama and stated that McVICKER is semi-truck driver who lives in his truck. In July 2019, McVICKER and ▇▇▇▇ began communicating regularly through text message and voicemail on his cell phone ▇▇▇▇

9. On August 9, 2019, McVICKER sent ▇▇▇▇ a series of text messages about conducting a mass shooting. McVICKER told ▇▇▇▇ "I was thinking about shooting a church up but I'm afraid how it will affect my family in the flesh after I'm gone. So I think I'm just gonna

Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 5 of 20   PageID #: 31
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 5 of 20
PageID #: 5

kill some people on the street and get away with it then kill myself." ▮ told McVICKER that he is sick and asked why he wants to kill innocent people, to which McVICKER advised that "They put spiritual snakes and spiders in my bed at night. I've only seen them a couple of times but they take form and I can feel them crawling on me and under me. If one really bites me I could die. They bit me on my throat twice an almost killed me but I was too strong."

10.   ▮ advised McVICKER to seek help and he replied "I'm telling you there won't be a glorious turn around for me I'm going to be gone soon forever." McVICKER continues to tell ▮ that evil "entities" entered his body and are torturing him. He further stated that he has been in a mental hospital three times and is on medication and has been told he is delusional, but he knows that it is real.

11.   On August 12, 2019, TFO ▮ made contact with McVICKER's mother, ▮ who confirmed that McVICKER is under treatment and on medication for schizophrenia. She also confirmed that he does often claim to be possessed by demons and hears voices. ▮ confirmed that McVICKER is currently in possession of a Ruger P90 handgun and sometimes uses cocaine and methamphetamine. McVICKER told ▮ that he plans to take time off work on August 22, 2019, while in Memphis, Tennessee.

12.   On August 14, 2019, at approximately 9:11 pm EST, ▮ called TFO ▮ to advise that she just completed a telephone call with McVICKER on the aforementioned cellular phone number. ▮ advised that McVICKER was erratic and told her that he was going to "shoot up" a church when he is in Memphis on August 22. ▮ stated that McVICKER was speaking in a frantic manner and told her that he intended to take his knife and slit the pastor's throat. ▮ said that McVICKER was sometimes incoherent and she did not discern an exact location; however McVICKER insisted that "something" would happen when he was in

Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 6 of 20   PageID #: 32
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 6 of 20
PageID #: 6

Memphis.

13. On August 15, 2019, TFO ▮ confirmed with McVICKER's employer, ▮ is in receipt of a leave request submitted by McVICKER for August 22, 2019. The leave request indicated that McVICKER would spend his leave time in Memphis.

14. On August 15, 2019, Mobile FBI Special Agent (SA) Ketrick Kelley met with ▮ With the consent of ▮ SA Kelley reviewed all text message conversations between McVICKER and ▮ on ▮ cellphone. SA Kelley confirmed the content of the aforementioned text messages, as outlined in the preceding paragraphs. ▮ lso provided SA Kelley with screenshots of the aforementioned text message communications with McVICKER. SA Kelley confirmed with ▮ the content of the voice conversation she had with McVICKER the previous day, concerning McVICKER carrying out a mass shooting at a church in Memphis, Tennessee on August 22, 2019.

15. On August 16, 2019, SA Kelley obtained a Federal arrest warrant authorized by United States Magistrate Judge Sonja F. Bivins for McVICKER for transmitting in interstate commerce messages from various locations within the United States to Fairhope, AL that contain clear threats to conduct a mass shooting and suicide, in violation of Title 18 § 875(c). Later that day, McVICKER was arrested without incident by SAs with the Indianapolis FBI and Indiana State Police. At the time of his arrest, McVICKER was in possession of a black Motorola phone with a black case, IMEI: 35550094976516. Arresting agents also located and seized drug paraphernalia, a Ruger 9mm semi-automatic handgun, and 100 rounds of 9mm ammunition from McVICKER's truck.

16. Subsequent to his arrest, McVICKER waived his Miranda Rights and provided the following information to Indianapolis FBI SAs: McVICKER admitted he sent text

Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 7 of 20   PageID #: 33
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 7 of 20
PageID #: 7

messages regarding committing a mass shooting at a church in Memphis and shooting random people. However, McVICKER said he never intended to kill others, only commit suicide, "next week in Memphis," on August 22. McVICKER has friends in Memphis, whom he met through one of his Navy friends. When he made the threat against the church, he had no specific church in mind. Upon being asked, McVICKER admitted he understood the difference between right and wrong. He felt like the only solution was to end it all or commit himself to a state hospital. McVICKER told Agents they would find a legally-owned Ruger firearm in his truck, along with two boxes of ammunition found in the pullout drawer behind the driver's seat. The firearm, which he purchased one and a half or two years ago at a gun shop in Port Charlotte, was for protection purposes. He only recently began carrying it in his truck. McVICKER denied having any narcotics in his possession, but admitted to having two crack pipes, which he had previously used. McVICKER said he uses crack cocaine a couple times per month and most recently smoked it the night before last. Upon being asked if he was currently high, McVICKER said "no." McVICKER buys his crack cocaine from different places all over, through people he has met at truck stops. McVICKER was diagnosed with schizophrenia for which he takes medication daily. His next doctor's appointment is scheduled for September. McVICKER has dealt with mental health issues for approximately the last seven years, but has only received treatment the last four or five years. The symptoms have gotten worse.

17. Based on my training, experience, and what I have learned from other law enforcement professionals, defendants will often keep and maintain cellular telephones. Cellular telephones maintain a record of incoming and outgoing text messages, SMS messages, and telephone calls, as well as telephone numbers, dates and times of text messages and SMS messages and calls that were placed or received by the operator. These devices also have camera

capabilities and may contain photographs or videos taken by the operator. Additionally, cellular phones commonly connect to other devices, such as laptops, tablets and portable music players through a technology known as the 'Cloud' whereby digital information from all devices is centrally stored in a single account and may be accessed from the other devices which comprise that cloud. Even if an individual attempts to delete messages, voicemails or pictures from a cellular phone or device, those same messages, voicemails and pictures will still remain in the cloud connected with that device and may be retrieved through forensic means.

18. As a criminal investigator, I know that communications which occur on electronic media may be accessible through multiple devices through technology such as iCloud, Google Drive, or other similar storage type accounts. Therefore, I request authorization to search all data on the seized electronic devices for evidence related to the crimes outlined above. As a criminal investigator, it is my understanding that people who have a proclivity to send threatening communications and are involved in the use of narcotics communicate over various electronic means, and may store related messages and images in various electronic means, to include all of the types of media mentioned above. McVICKER's cell phone, further described above, was seized at the time of McVICKER's arrest, where it was placed in Indiana State Police evidence until transfer to the Indianapolis FBI on September 16, 2019, and subsequent transfer to the Mobile FBI on September 24, 2019.

19. Based on my training, experience, and what I have learned from other law enforcement professionals, the affiant submits there is probable cause to believe electronically stored evidence and instrumentalities of the crimes of violation 18 U.S.C. § 875(c), Interstate Communications and 18 U.S.C. § 922(g)(3), Unlawful User in Possession of a Firearm. This evidence is believed to be contained on a cellular phone identified as belonging to McVICKER,

Case 1:19-mj-00169-B Document 1-1 Filed 11/05/19 Page 9 of 20 PageID #: 35
Case 1:19-mj-00169-B *SEALED* Document 1 *SEALED* Filed 11/05/19 Page 9 of 20
PageID #: 9

to include, but is not limited to, telephone numbers, names, photographs, videos, voice mail, call history, text messages, texting applications, social media applications, and any information contained locally within any iCloud, Google Drive, DropBox, SkyDrive accounts, and any search terms run through web browsers, including but not limited to Google, Bing, and Yahoo, or other similar storage type accounts associated with that cellular phone, tablet computer, and laptop computer.

20. I hereby state that upon oath that the foregoing information is true to the best of my knowledge and belief.

21. This device is currently in the lawful possession of the FBI. It has been provided to the Mobile FBI by the Indianapolis FBI, who received the device from the Indiana State Police. I seek this warrant to be certain that an examination of the devices will comply with the Fourth Amendment and other applicable laws.

22. This device is currently in storage at the Evidence Control Room of the Mobile Division of the FBI, 200 North Royal Street, Mobile, Alabama. In my training and experience, I know that the device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the FBI.

## TECHNICAL TERMS

23. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication

through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, which is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 13 of 20   PageID #: 39
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 13 of 20
PageID #: 13

Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

i. Facebook is an online social networking website where people can create profiles, share information such as photos and quotes about themselves, and respond or link to the information posted by others. A user's Facebook account can be accessed via cellular telephone by downloading the Facebook mobile device application to their phone. The people a user has agreed to be connected to are referred to as "Facebook friends", or "friends." Facebook friends can view one another's posts and information a user provides on the Facebook website and Facebook mobile application.

j. Facebook Messenger is a mobile tool that allows Facebook users to instantly send private chat messages to friends on Facebook. Those who use Facebook Messenger have downloaded the Facebook Messenger mobile device application.

Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 14 of 20   PageID #: 40
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 14 of 20
PageID #: 14

which is linked to their Facebook profile. Facebook Messenger enables users to send and receive chat messages to people who are logged onto their Facebook accounts using their mobile devices. Images, such as photographs taken with a digital camera on a cellular telephone, can be shared between users via Facebook Messenger.

24. Based on my training, experience, and research, I know that these Devices have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDA's. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26. There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or

Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 15 of 20   PageID #: 41
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 15 of 20
PageID #: 15

years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

## FORENSIC EXAMINATION

27. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct

Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 16 of 20   PageID #: 42
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 16 of 20
PageID #: 16

evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**CONCLUSION**

Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 18 of 20   PageID #: 44
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 18 of 20
PageID #: 18

30. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Lisa M. Reiter
Special Agent
Federal Bureau of Investigation

THE ABOVE AGENT HAS ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS 5th
DAY OF NOVEMBER, 2019

_____
SONJA BIVINS
UNITED STATES MAGISTRATE JUDGE

Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 19 of 20   PageID #: 45
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 19 of 20
PageID #: 19

## ATTACHMENT A

The property to be searched is the following (hereafter referred to as device):

Type:      Cell Phone

Make:      Motorola

Model:     XT1929-17

IMEI:      355550094976516

This device is currently located at the FBI Mobile Evidence Control Room located at 200 N. Royal Street, Mobile, AL 36603. This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

Case 1:19-mj-00169-B   Document 1-1   Filed 11/05/19   Page 20 of 20   PageID #: 46
Case 1:19-mj-00169-B *SEALED*   Document 1 *SEALED*   Filed 11/05/19   Page 20 of 20
PageID #: 20

## ATTACHMENT B

1. All records on the device described in Attachment A that relate to the violations of Title of Title 18 § 875(c), Interstate Transmission of Threat to Injure and 18 U.S.C. § 922(g)(3), Unlawful User in Possession of a Firearm, that involves Thomas Matthew McVicker including:

    a. Images of firearms, narcotics, or potential targets of violence;

    b. Communications showing intent and descriptions of illicit criminal activity;

    c. Information pertaining to possible victims.

2. Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents and browsing history.